UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

CHRISTOPHER LAMAR,

                Plaintiff,

-against-

JO ANNE B. BARNHART,
Commissioner of Social Security

                Defendant.
----------------------------------------------------------------X

MEMORANDUM AND ORDER
04-CV-0578 (NGG)

GARAUFIS, District Judge.

      Christopher Lamar (the "Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act to review the final determination of the Commissioner of Social Security Jo Anne B. Barnhart ("Commissioner"), denying the Plaintiff's application for a Period of Disability and Disability Insurance Benefits sought pursuant to 42 U.S.C. §§ 416(i) and 423, respectively. The Commissioner moves this court for an order of remand, and the Plaintiff cross-moves for outright reversal. For the reasons set forth below, the Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED and the case is REVERSED and REMANDED to the Commissioner solely for the computation of benefits.

**I.    Background**

    **A.    Procedural History**

      The Plaintiff filed an application for Social Security Disability Insurance Benefits on February 7, 2001, alleging that he had become disabled on February 17, 2000 after he was hit by a crane and fell forty feet into a ditch. (Transcript of the Record ("Tr.") at 17, 47.) The Plaintiff retained counsel on October 23, 2000. (Tr. 57.) The Plaintiff's application for benefits was

denied on March 28, 2001 by the Social Security Administration. The Plaintiff then appeared before Administrative Law Judge ("ALJ") Edward McNeil. (Tr. 48-51, 23-46.) Following a hearing, ALJ McNeil denied the Plaintiff's request for benefits on June 21, 2002. (Tr. 13-22.) The Social Security Administration Appeals Council denied the Plaintiff's request for review on January 8, 2004. (Tr. 4-7.) The Plaintiff then timely commenced this action.

During the pendency of the instant application for benefits, the Plaintiff filed a second application for disability benefits. ALJ Robert D. Gill found the Plaintiff disabled based on the second application, with an onset date of June 22, 2002. Therefore, the present case is an application for benefits for a closed period from February 17, 2000 through June 21, 2002.

### B. The Plaintiff's Personal and Employment History

The Plaintiff was born on February 16, 1963. (Tr. 26.) At the time of his injury, the Plaintiff was 37 years old. The Plaintiff completed the tenth grade of high school. (Tr. 28.) During the incident causing the Plaintiff's alleged disability, the Plaintiff was engaged in demolition work, which he had been performing for approximately one year and five months, and which the Plaintiff had done in the past. (Id.) The Plaintiff's past work experience includes employment as a home attendant and a metal frame and sheet rock worker. (Tr. 84.)

### C. The Plaintiff's Medical History

On February 17, 2000, the Plaintiff was hit in the back with a crane and fell forty feet into a ditch while working at a construction site. (Tr. 17.) The Plaintiff was subsequently admitted to St. Vincent's Medical Center where he complained of dizziness and chest, back, and rib pain. (Tr. 188.) During the initial examination, the Plaintiff was reported as S/P (status post) concussion, with some disorientation. (Tr. 189, 207.) The Plaintiff was discharged on the same

2

day. (Tr. 195.)

Several days later, on February 22, 2000, the Plaintiff returned to the emergency room at St. Vincent's Hospital complaining of pain in his right leg. (Tr. 209, 212.) The Plaintiff was again discharged on the same day, with a prescription for pain medication. (Tr. 213.)

On March 8, 2000, the Plaintiff was examined by Dr. Michael S. Bykofsky. (Tr. 228.) The Plaintiff testified that Dr. Bykofsky treated him once or twice a month for approximately two years. (Tr. 39.) The Plaintiff complained of weakness and decreased sensation in his lower extremities, pain in his left elbow and neck, difficulties with his right hand, visual blurring, headaches and dizziness. (Tr. 228.) Dr. Bykofsky's examination noted decreased power in the right biceps and triceps, as well as in the right leg. (Tr. 229.) Pinprick tests revealed decreased sensation in the upper right extremities. (Tr. 228-30.) The Plaintiff's gait was antalgic. (Tr. 230.) The Plaintiff's range of motion was decreased in the cervical spine with spasm. (Id.) The lumbosacral spine was also positive for spasm. (Id.) Dr. Bykofsky's impressions were of cerebral concussion and post-concussion syndrome, migraines due to head trauma, cervicalgia and lumbalgia, and cervical and lumbosacral radiculopathy. (Id.) Dr. Bykofsky recommended an EEG, rehabilitation, and an MRI, and opined that the Plaintiff was totally disabled. (Tr. 231.)

The Plaintiff was seen by Dr. Bykofsky again on March 17, 2000, nine days later. (Tr. 235.) The Plaintiff was again found to be totally disabled by Dr. Bykofsky. (Id.) The Plaintiff received physical therapy under Dr. Julian Sosner, an Associate Professor of Rehabilitation at St. Vincent's Hospital. (Id.) On March 16, 2000, Dr. Sosner noted tenderness of the lumbar sacral spine with left paralumbar muscle spasm. (Tr. 254.) Dr. Sosner's impression was of cervical and lumbar sprains and lumbar radiculopathy on the right and right sacroiliac dysfunction. (Id.)

3

On March 27, 2000, the Plaintiff was admitted to Kings County Hospital where he remained for four days. (Tr. 115-82.) He complained of pains in his lower back and lower legs. (Tr. 116). Dr. Nosseunali Shanhidi diagnosed back pain with radiculopathy. (Tr. 118.) A CT scan of the Plaintiff's spine showed left L3-4 neuro-foraminal disc protrusions with obliteration of the neuroforaminal fat. (Tr. 121.)

The Plaintiff was re-examined by Dr. Bykofsky on May 3, 2000, and again on May 15, 2000 and May 31, 2000. (Tr. 232, 233, 234.) He prescribed Zanaflex and Neurontin, and later increased the Plaintiff's Zanaflex dosage. (Tr. 232.) The Plaintiff was examined by a number of other specialists, including a urologist, and by Dr. Ganesan Shantha, who provided estimates of the Plaintiff's residual functional capacity (RFC). (Tr. 99-101.) Dr. Shantha noted that the injury affected the Plaintiff's ability to stand, walk and sit, and that reaching, pushing, and pulling could aggravate the Plaintiff's back and neck pain. (Tr. 99-100.) The Plaintiff was also re-examined by Dr. Sosner in a follow-up on May 16, 2000. (Tr. 254-55.) Dr. Sosner noted that the Plaintiff had been admitted to University Hospital of Brooklyn for severe back pain and sciatica from April 12 through April 16, 2000. (Id.) An MRI of the thoracal lumbar spine at that time showed L3-4 and L4-5 degenerative disc diseases and disc bulging. (Tr. 255.) On examination, deep tendon reflexes were symmetrical in both upper and lower extremities, and plantars were downward moving. (Id.) Straight-leg reasoning was positive on the right at 45 degrees. (Id.) There was questionable decreased strength of the right ankle in dorsi flexion. (Id.) Dr. Sosner also noted positive tenderness of the lumbar sacral spine on percussion. (Id.) After the examination, Dr. Sosner's impression was of degenerative disc disease, disc bulging and radiculopathy L4-5 on the right side. (Id.)

On May 22, 2000, the Plaintiff was examined by Dr. Michael Weinberger, a Pain Management Specialist at University Pain Center. (Tr. 258.) Radiological data showed disc dessication at L3-4 and L4-5, degenerative changes at the implant of L4-5 and disc bulges at L3-4 and L4-5. (Tr. 258.) Dr. Weinberger commented that he found no gross defects at the examination, but noted that the Plaintiff had a history of weakness in the lower extremities and of his legs giving out. (Tr. 259.) Dr. Weinberger recommended epidural steroid injections. (Id.) Dr. Barkowski, a neurologist, completed an assessment of work related activities on May 22, 2000 and opined that the Plaintiff was unable to do any lifting or carrying. (Tr. 96-98.) He opined that the Plaintiff was unable to stand, walk or sit as a result of cervical and lumbosacral radiculopathy. (Id.)

On July 5, 2000, the Plaintiff was again examined by Dr. Bykofsky. (Tr. 236.) The Plaintiff reported that he had fallen on June 19, 2000 because his right leg gave out. (Id.) The Plaintiff had been given a cane by his physical therapist. (Id.) Examination revealed that the Plaintiff's range of motion in his back was decreased. (Id.) The Plaintiff claimed that the medications had limited effectiveness. (Id.)

Dr. Bykofsky examined the Plaintiff again on August 11, 2000. (Tr. 237.) The Plaintiff reported suffering from severe headaches, neck and back pains. (Id.) Dr. Bykofsky reported increased cervical muscle spasm and decreased range of motion. (Id.) The Plaintiff suffered from decreased sensation in the tips of his fingers and right toes, as well as decreased grasp. (Id.) Dr. Bykofsky also noted decreased pinprick sensation in the upper extremities bilaterally at C6/8 and L5/S1. (Id.) Dr. Bykofsky's impression was cervical and lumbosacral spasm and derangement with radicular symptoms. (Id.)

5

Dr. Bykofsky continued to treat the patient throughout the ensuing months. (Tr. 241, 243-45.) On September 11, 2000, the Plaintiff reported that he was unable to move his legs and experienced reduced sensation. (Tr. 239.) Dr. Bykofsky noted decreased motor strength and decreased grasp, as well as decreased range of motion with cervical and lumbosacral spasm. (Tr. 239.) On September 27, 2000, Dr. Bykofsky reported that the Plaintiff was beginning to demonstrate trophic symptoms. (Tr. 241.) The Plaintiff's right hands and toes were swelling, and the Plaintiff suffered from decreased temperature in his right hand. (Id.) Dr. Bykofsky opined that the Plaintiff was totally disabled. (Id.) His impressions were chronic regional pain syndrome, radiculopathies, spasm, and derangement. (Id.) During an October 27, 2000 examination, Dr. Bykofsky noted no change to his diagnoses and recommended that the Plaintiff be approved for treatment as suggested by Dr. Sosner. (Tr. 244.) Dr. Bykofsky again opined that the Plaintiff was totally disabled on November 27, 2000. (Tr. 245.)

After a follow-up with the Plaintiff on December 18, 2000, Dr. Sosner reported a decreased range of motion in the cervical lumbar spine, which was one-third of normal. (Tr. 256.) There was no sign of muscle asymmetry in both upper, lower extremities or trunk. (Id.) Dr. Sosner recommended a neurological work-up. (Id.)

Dr. Bykofsky found no change in the Plaintiff's condition after an examination on January 16, 2001. (Tr. 246.) On February 7, 2001, Dr. Bykofsky's report shows that the Plaintiff's medications were Depakote, Vicodin, Zanaflex, and Ambien. (Tr. 247.) After consulting with Dr. Sosner, Dr. Bykofsky noted that physical therapy would not be helpful at present. (Id.) Although the Plaintiff experienced some subjective relief after physical therapy, there was no objective change in his condition. (Tr. 250.) Dr. Bykofsky again opined that the

6

Plaintiff was totally disabled.  (Id.).

At the request of a state agency,[1] Dr. Mohammad Khattak examined the Plaintiff on March 16, 2001.  (Tr. 104, 281-82.)  There is no indication that Dr. Khattak reviewed the Plaintiff's medical records, including the MRI of the Plaintiff's spine.  (*See* Tr. 281-82.)  Rather, Dr. Khattak only appears to have conducted a brief physical examination of the Plaintiff.  Dr. Khattak noted no muscle spasm or tenderness in the cervical spine.  (Tr. 281.)  Dr. Khattak found normal range of motion in the shoulders.  (Id.)  Joints of the elbow, forearm, and hands were normal, with no signs of swelling, effusion, or instability.  (Id.)  Dr. Khattak noted no intrinsic muscle atrophy in the upper extremities.  (Id.)  Examination of the lumbar spine revealed no paraspinal muscle spasm or paraspinal, sacroiliac or sciatic notch tenderness.  (Id.)  Dr. Khattak also found that the range of motion of the hips, knees, and ankle joints were normal and that they showed no signs of swelling, effusion or instability.  (Tr. 282.)  Contrary to the conclusions of the Plaintiff's treating physicians, Dr. Khattak opined that the Plaintiff had no limitation with regard to bending, sitting, standing, walking, lifting, carrying, or reaching with gross and fine manipulations in his hands.  (Tr. 282.)  He also opined that the claimant did not need any assistive devices for ambulation.  (Id.)

Irene Shnitkind, a physician's assistant in the Neurosurgery Department of Kings County Hospital, completed a medical report for disability on February 7, 2002.  (Tr. 108-09.)  She noted that an MRI of the cervical spine on January 9, 2002 showed C5-6 posterior midline disc herniation with cord impingement.  (Tr. 108, 112-13.)  An MRI of the lumbosacral spine done on

---

[1] The record does not indicate which state agency requested that the plaintiff see Dr. Khattak.

January 17, 2002 revealed L4-5 moderate disc bulge. (Tr. 108, 110-11.) Ms. Shnitkind reported that motor strength on the right upper and lower extremities were 4/5 as compared to 5/5 on the left extremities. (Tr. 108.) The Plaintiff lacked sensation, vibration, and positive sense on the right. (Id.) Reflexes were three plus in the lower extremities, and one plus in the upper extremities. (Id.) She reported that the Plaintiff was unable to lift ten pounds, stand or walk two hours a day, or sit six hours a day. (Tr. 109.) Ms. Schitkind noted that her findings led to the conclusion that the Plaintiff's functional capacity was less than sedentary. (Id.)

On February 8, 2002, Dr. Shantha reported that the Plaintiff had been treated in the pain management clinic at Kings County Medical Hospital since March 2000. (Tr. 107.) Dr. Shantha's diagnoses were traumatic cervical radiculopathy with C6-7 cord impingement by disc herniating, lumbar back pain likely due to disc dessication at L4-5 and L3-4, and lumbar radiculopathy. (Id.) He noted that the Plaintiff had been unable to perform simple daily tasks. (Id.)

The Plaintiff was admitted to Kings County Hospital Center on April 20, 2002. (Tr. 285.) He was diagnosed with lower back pain, myofascial pain syndrome and seizure disorder. (Tr. 286.) He was discharged on April 27, 2002 with follow-up at the Kings County Outpatient Clinic for pain management. (Tr. 284)

### D. Non-Medical Evidence

The Plaintiff testified that as a result of his injuries, he needs assistance with certain aspects of daily living, such as washing the lower portion of his body in the shower, being helped off the toilet seat, and tying the strings of his shoes. (Tr. 27.) The Plaintiff maintains that he develops pain after sitting for 35-40 minutes, and after standing for 40-45 minutes. (Tr. 38.) He

8

asserts that he can only walk about one and one-half blocks. (Id.) The Plaintiff also claims difficulty in lifting and carrying. (Tr. 38-39.) The Plaintiff can conduct household chores, including wiping tables, dusting, and vacuuming. (Tr. 75.)

II.     Discussion

   A.     Standard of Review

A district court's review of the denial of social security benefits is constrained by whether there is "substantial evidence" to support the Commissioner's decision. Beckles v. Barnhart, 340 F.Supp.2d 285, 287 (E.D.N.Y. 2004) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 287 (internal citation and quotation marks omitted). In determining whether such substantial evidence exists, the court "'must not look at the supporting evidence in isolation, but must view it in light of the other evidence in the record that might detract from such finding, including, any contradictory evidence and evidence from which conflicting inferences may be drawn.'" Id. at 287 (quoting Rivera v. Sullivan, 771 F.Supp. 1339, 1351 (S.D.N.Y. 1991)).

The ALJ is required to give controlling weight to a treating physician's opinion if it is supported by the evidence and is not inconsistent with other substantial record evidence. See Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). Factors for consideration when the treating physician's opinion is not given such controlling weight include: "(i) the frequency of the examination and the length, nature, and extent of the treatment relation; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." Id. at 134 (quoting Clark v. Commissioner of Social

Security, 143 F.3d 115, 118 (2d Cir. 1998)).

"Where there are gaps in the administrative record or the ALJ has applied an improper legal standard, [courts] have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence." Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir. 1999) (citations omitted). However, where there is no apparent basis to conclude that a more complete record might support the Commissioner's decision, courts may remand for a calculation of benefits. Id.

**B.     The ALJ's Decision**

The Commissioner must use a five-step sequential analysis to determine whether an individual is entitled to disability benefits:

> First, the Commissioner must determine whether the claimant is doing substantial gainful work. 20 C.F.R. § 404.1520(b). Second, if the claimant is not doing substantial gainful work, the Commissioner must then determine whether he or she has a "severe impairment." 20 C.F.R. § 404.1520(c). Third, if a severe impairment exists, the Commissioner must next consider medical evidence to determine if the claimant has an impairment listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(d). Fourth, if the claimant does not have a listed impairment, the Commissioner must analyze whether the impairment prevents the claimant from doing his or her past work. 20 C.F.R. § 404.1520(e). Finally, if the claimant cannot perform past work, the Commissioner must determine whether the impairment prevents him or her from doing any other work. 20 C.F.R. § 404.1520(f). If so, the Commissioner must find the claimant disabled.

Beckles, 340 F.Supp.2d at 288 (citing Shaw, 221 F.3d at 132). The claimant bears the burden of proof on the first four steps; if he or she succeeds, then the Commissioner bears the burden of proof on the fifth step. See Shaw, 221 F.3d at 131. The Commissioner must take into account the claimant's "residual functional capacity, age, education, and work experience" in applying the applicable vocational guidelines (the grids) and determining "whether the claimant is able to

10

engage in any substantial gainful work existing in the national economy." Beckles, 340 F.Supp.2d at 288 (citing Rosa, 168 F.3d at 78).

In the instant case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the date of his injury. (Tr. 17). The ALJ found the Plaintiff's degenerative disc disease of the cervical and lumbosacral spine to be a severe impairment, but maintained that it did not meet or medically equal one of the listed impairments in Appendix 1. (Tr. 21.) The ALJ further determined that the Plaintiff was unable to engage in his past relevant work, which included employment as a demolition worker, home attendant and metal frame and sheet rock worker. (Tr. 20.) However, citing the results of Dr. Khattak's examination, the ALJ found that the Commissioner adequately proved that the Plaintiff had the residual functional capacity to perform the full range of sedentary work. (Tr. 20-21.) The ALJ characterized sedentary work as involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." (Tr. 20.) He therefore determined that the Plaintiff was not under a "disability" as defined in the Social Security Act. (Tr. 22.)

## II. Discussion

The Plaintiff claims that the ALJ's findings are not supported by substantial evidence and that the record compels outright reversal of the ALJ's decision and a calculation of benefits for the Plaintiff. The Commissioner concedes that the ALJ's determination is not supported by substantial evidence, but argues that the decision should be remanded for further proceedings, rather than directly for the computation of benefits.

As both parties correctly recognize, the ALJ's findings are not supported by substantial evidence. In determining the Plaintiff's RFC, the ALJ relied exclusively on the findings of Dr.

11

Khattak, who found that the Plaintiff had no limitations in his ability to sit, stand, walk, lift or carry. (Tr. 21, 282.) However, Dr. Khattak's findings are grossly inconsistent with the totality of evidence in the record. Dr. Bykofsky, the Plaintiff's treating source, opined numerous times that the Plaintiff was totally disabled. (Tr. 231, 235, 241, 244, 245, 246, 250.) Dr. Shantha noted that the Plaintiff was unable to perform "simple daily tasks." (Tr. 107.) Dr. Weinberger commented that radiological data showed disc dessication at L3-4 and L4-5, degenerative changes at the implant of L4-5 and disc bulges at L3-4 and L4-5. (Tr. 258.) Ms. Shnitkind concluded that the Plaintiff's functional capacity was less than sedentary (Tr. 109.) As aptly characterized by the Commissioner herself, Dr. Khattak's "sparsely documented opinion" is "inconsistent with the bulk of the objective evidence in the record, which documented consistent treatment for pain, herniated discs, and severely decreased ranges of motion in the spine."[2] (Comm'r Mem at 12.)

In order to justify remand for further development, the Commissioner is required to provide "good cause for the failure to incorporate [new] evidence into the record in a prior proceeding." See Carroll v. Secretary of Health and Human Services, 705 F.2d 638, 644 (2d Cir. 1983); see also Rosa, 168 F.3d at 82-83. Here, there is no new evidence meriting a remand for further development. Although the Commissioner asserts that remand is appropriate so that the Commissioner may consider additional medical evidence submitted by the Plaintiff in his subsequent action, the evidence, including a report by Dr. Bykofsky, merely recapitulates what is

---

[2] In addition, as the Commissioner concedes, the ALJ also erred in not giving controlling weight to the Plaintiff's treating sources. See Shaw, 221 F.3d at 134 (ALJ is required to give controlling weight to a treating physician's opinion if it is supported by the evidence and is not inconsistent with other substantial record evidence). Here, the ALJ did not give such weight to Dr. Bykofsky's assessments, nor did he provide any reasons for failing to do so, even though the findings of several other medical personnel supported Dr. Bykofsky's diagnoses. (Tr. 17-18.)

already in the record. The Plaintiff underwent numerous examinations conducted by various medical personnel that are documented in the record. The Plaintiff's hospital records are similarly well documented. (Tr. 114-82, 183-225, 284-286.) The Plaintiff's situation is analogous to that in Parker v. Harris, 626 F.2d 225, 235 (2d Cir 1980), in which the court reversed and remanded solely for the calculation and payment of benefits because no further purpose would be served by a remand for the development of further evidence. Like Parker, remand would serve no further purpose because the record here clearly demonstrates persuasive proof of the Plaintiff's disability, as numerous doctors' examinations diagnosed the Plaintiff's "total disability" and inability to lift, carry, or perform simple daily tasks. (Tr. 231, 235, 241, 244, 245, 246, 250, 107-09.)[3] Accordingly, remand solely for the calculation of benefits is appropriate.

In addition, this court is troubled by the apparent insensitivity of the ALJ to the overwhelming evidence of the claimant's disability. There are few nuances here. The ALJ's inexplicable disregard for the repeated, well-supported recommendations of the plaintiff's treating physicians in favor of Dr. Khattak's slipshod and specious report raises serious questions as to ALJ McNeil's understanding of his obligations and his commitment to the balanced and thoughtful review of social security claims.

---

[3] The Commissioner's reliance on Rosa in support of its motion is misplaced. In Rosa, the extent of Rosa's injuries was unclear. Rosa, 169 F.3d 72, 83. Here, by contrast, the nature and extent of the Plaintiff's injuries are fully attested to by the extensive documentation in the record. This case is similarly distinguishable from Pratts v. Chater, 94 F.3d 34 (2d Cir. 1996), also cited by the Commissioner, in which the Second Circuit remanded the case for further proceedings where much of Pratts' medical history was missing, Pratts' medical records were incomplete, illegible, and incoherent, and where the ALJ relied on a hearing record which was "significantly compromised by the failure to transcribe a portion of [the only medical expert's] testimony." Id. at 38-39. Here, the record is well developed, coherent, and legible.

This court also questions the state's continued reliance on Dr. Khattak's "medical" opinions. Contrary to his duty as a medical professional, Dr. Khattak's summarily concluded that the claimant had <u>no</u> limitation of function without conducting a thorough examination of the claimant or a thorough review of the claimant's medical history. Dr. Khattak's unsupported, Panglossian diagnoses thwart the ability of legitimately disabled individuals such as Lamar to receive the much-needed compensation to which they are entitled.

Accordingly, I recommend that the Commissioner undertake measures to remediate ALJ McNeil's deficiencies. With regard to Dr. Khattak, I direct that the Commissioner forward a copy of this Memorandum and Order to the appropriate authorities of the State of New York for such official action as is deemed appropriate.

### III.  Conclusion

For the reasons set forth above, the case is REVERSED and REMANDED solely for the computation of benefits.

SO ORDERED.

Dated: June 21, 2005                                          /s/ Nicholas G. Garaufis
      Brooklyn, N.Y.                                         Nicholas G. Garaufis
                                                      United States District Judge